No. 23-20281

# IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

SHANITA TERRELL,

Plaintiff-Appellant,

*versus*

HARRIS COUNTY; MICHAEL HINES; MARK CANNON; ED GONZALEZ,

Defendants-Appellees.

On Appeal from the United States District Court
for the Southern District of Texas
Civil Action No. 4:22-cv-302

BRIEF OF APPELLANT SHANITA TERRELL

*Submitted by*:
Randall L. Kallinen & Alexander C. Johnson
Kallinen Law PLLC
511 Broadway Street
Houston, Texas 77102
Telephone: 713.320.3785
**Attorneys for Appellant**

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in 5th Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

| Appellant: | Counsel for Appellant: |
|---|---|
| Shanita Terrell | Randall Kallinen & Alexander Johnson<br>Kallinen Law PLLC, Houston, TX |

| Appellees: | Counsel for Appellees: |
|---|---|
| Harris County | Rachel Susan Fraser<br>Harris County Attorney's Office,<br>Houston, Texas |
| Ed Gonzalez | |
| Mark Cannon | Suzanne Rene Bradley<br>Harris County Attorney's Office,<br>Houston, Texas |
| Michael Hines | |

*/s/ Alexander C. Johnson*
Alexander C. Johnson
**Attorney for Appellant**

# STATEMENT REGARDING ORAL ARGUMENT

The basis of this lawsuit is factually intensive, and Appellant respectfully suggests that the Court would benefit from hearing oral arguments. Ms. Terrell moves pursuant to <u>Federal Rule of Appellate Procedure 34(a)</u> to add this case to the argument calendar. This case meets the standards in Rule 34(a)(2) for oral argument, in that (a) this appeal is not frivolous, (b) the dispositive issues raised in this appeal have not been recently and authoritatively decided, and (c) the decisional process would be significantly aided by oral argument.

Further elucidation beyond the cold facts in the briefs would assist the Court in these proceedings, along with a detailed discussion of the complex legal issues presented. Appellant seeks a reversal of the district court, and it is an understanding of the nuances in the facts and legal reasoning that oral argument would benefit.

# TABLE OF CONTENTS

Certificate of Interested Persons                                           i

Statement Regarding Oral Argument                                           ii

Table of Contents                                                          iii

Table of Citations                                                          v

Jurisdictional Statement                                                    1

Statement of the Issues                                                     2

Statement of the Case                                                       3

    **Course of Proceedings**                           3

    **Statement of Facts**                              4

    **Standard of Review**                              6

Summary of the Argument                                                     8

Argument                                                                    9

    **1. Appellant's claims against the Cannon and Gonzalez should have easily survived, and qualified immunity has outlived its usefulness.**   9

    *1.1.    Deputy Cannon was unquestionably "acting under color of state law."*   9

    *1.2.    Deputy Cannon may be held liable for his unlawful seizure of Ms. Terrell under the 4th Amendment, and Ms. Terrell has overcome his assertion of the qualified immunity defense.*   11

    *1.3.    Sheriff Gonzalez may be held liable as a supervisor.*   19

    *1.4.    Qualified immunity is a fundamentally flawed doctrine that should no longer exist, or at the very least should not apply outside of the "heat-of-the-moment" decisions they were created to protect.*   21

2.  Appellant's *Monell* claims against the Harris County are also more than plausible.     23

Conclusion     26

Certificate of Service     27

Certificate of Compliance     27

# TABLE OF CITATIONS

**CASES**

*Anderson v. Creighton*, 483 U.S. 635 (1987) ................................................ 17

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................................... 7

*Baker v. Putnal*, 75 F.3d 190 (5th Cir. 1996) ............................................. 19

*Bell Atl. Corp. v. Twombly*, 550 U.S. 554 (2007) ......................................... 7

*Brand Coupon Network LLC v. Catalina Mktg. Corp.*, 748 F.3d 631 (5th Cir.
   2014) ...................................................................................................... 7

*Brendlin v. California*, 551 U.S. 249 (2007) ................................................ 12

*Brower v. County of Inyo*, 489 U.S. 593 (1989) ..................................... 11, 12

*Bustos v. Martini Club, Inc.*, 599 F.3d 458 (5th Cir. 2010) .......................... 9

*California v. Hodari D.*, 499 U.S. 621 (1991) ........................... 11, 12, 13, 17

*Casanova v. City of Brookshire*, 119 F. Supp. 2d 639 (S.D. Tex. 2000) ....... 19

*Connick v. Thompson*, 131 S. Ct. 1350 (2011) ............................................. 23

*Cooper v. Brown*, 844 F.3d 517 (5th Cir. 2016) ......................................... 16

*Deville v. Marcantel*, 567 F.3d 156 (5th Cir. 2009) .................................... 15

*Erickson v. Pardus*, 551 U.S. 89 (2007) ....................................................... 7

*Florida v. Royer*, 460 U.S. 491 (1983) ................................................. 11, 17

*Glisson v. Indiana Department of Corrections*, 849 F.3d 372 (7th Cir. 2017) 24

*Gomez v. Galman*, 18 F.4th 769 (5th Cir. 2021) ...................... 9, 10, 11, 16

*Haase v. Countrywide Home Loans, Inc.*, 748 F.3d 624 (5th Cir. 2014) ......... 6

*Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141 (5th Cir. 2009) ...... 7

*Hoggard v. Rhodes*, <u>141 S. Ct. 2421</u> (2021) ................................................. 22

*In re Supreme Beef Processors, Inc.*, <u>468 F.3d 248</u> (5th Cir. 2006) .................. 7

*J.K.J. v. Polk County*, <u>960 F.3d 367</u> (7th Cir. 2020) .................................... 24

*Johnson v. City of Shelby*, <u>574 U.S. 10</u>, (2014) ................................................ 8

*Joseph v. Bartlett*, <u>981 F.3d 319</u> (5th Cir. 2020) .................................... 15, 16

*Katz v. United States*, <u>389 U.S. 347</u> (1967) ...................................... 17, 18, 19

*Keller v. Fleming*, <u>952 F.3d 216</u> (5th Cir. 2020) ........................................... 17

*Lipman v. Budish*, <u>974 F.3d 726</u> (6th Cir. 2020) ............................................. 8

*Marbury v. Madison*, 5 U.S. (1 Cranch) 137 (1803) ................................... 21

*McLin v. Ard*, <u>866 F.3d 682</u> (5th Cir. 2017) ................................................ 13

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, <u>572 U.S. 545</u> (2014) . 22

*Pearson v. Callahan*, <u>555 U.S. 223</u> (2009) ................................................. 15

*Pineda v. City of Houston*, <u>124 F. Supp. 2d 1057</u> (S.D. Tex. 2000) ............. 24

*Rogers v. Jarrett*, <u>63 F.4th 971</u> (5th Cir. 2023) ........................................... 22

*Ross v. Blake*, <u>578 U.S. 632</u> (2016) ............................................................ 22

*Screws v. United States*, <u>325 U.S. 91</u> (1945) ................................................. 9

*Sosa v. Martin Cty.*, _ F.4th _, No. 20-12781, <u>2023 U.S. App. LEXIS 1494</u>

   (11th Cir. Jan. 20, 2023) ....................................................... 21

*Thompson v. City of Galveston*, <u>800 F. Supp. 2d 826</u> (S.D. Tex. 2011) ......... 8

*Tolan v. Cotton*, <u>572 U.S. 650</u> (2014) ......................................................... 15

*United States v. Mendenhall*, <u>446 U.S. 544</u> (1980) ........................... 11, 12, 17

*United States v. Sharpe*, <u>470 U.S. 675</u> (1985) ............................................. 18

*United States v. Tarpley*, <u>945 F.2d 806</u> (5th Cir. 1991) .......................... 9, 10

*Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724 (5th Cir. 2019) ............. 7

*Webb v. Town of Saint Joseph*, 925 F.3d 209 (5th Cir. 2019) ...................... 23

*Werner v. Wall*, 836 F.3d 751 (7th Cir. 2016) ............................................. 21

*West v. Atkins*, 487 U.S. 42 (1988) .............................................................. 9

## STATUTES

42 U.S.C. § 1983 ........................................................................................ 22

Civil Rights Act of 1871, ch. 22, § 1, 17 Stat. 13 ....................................... 22

## RULES

Fed. R. Civ. P. 12(b)(6) ............................................................................... 6

Fed. R. Civ. P. 8(a)(2) ................................................................................. 7

Federal Rule of Evidence 201 ..................................................................... 6

## OTHER SOURCES

Alexander A. Reinert, *Qualified Immunity's Flawed Foundation*, 111 Calif. L. Rev. 201 (2023) ......................................................................................... 22

William Baude, *Is Qualified Immunity Unlawful?*, 106 Calif. L. Rev. 45 (2018) ....................................................................................................... 22

# Jurisdictional Statement

Jurisdiction exists under <u>28 U.S.C. § 1331</u> federal question jurisdiction because this case arises under <u>42 U.S.C. § 1983</u> for an alleged violation of Appellants' civil rights. Jurisdiction also exists under <u>28 U.S.C. § 1343(3)</u> to redress the deprivation of Appellant's civil rights. This Court has jurisdiction under <u>28 U.S.C. § 1291</u> over appeals from the final decision of a district court, and under <u>Federal Rule of Appellate Procedure 4</u>.

In the Briefing Notice, the Court directed the parties to address whether there had been an appealable final decision over which it could exercise its jurisdiction. Below, the district court granted Defendants Harris County, Ed Gonzalez, and Mark Cannon's motions to dismiss, dismissing the claims against them with prejudice.[1] Plaintiff then voluntarily dismissed the remaining Defendant, Michael Hines, who never answered the lawsuit.[2] The district court entered an order of dismissal noting that "[t]he claims against Hines are dismissed, without prejudice," but went on to state that "[n]o defendants remain in this case . . . and it is accordingly closed. Each party is to bear its own costs."[3] Moreover, the statute of limitations has expired on Plaintiff's claims against Hines. As a result, between the closure of the case, assignment of cots, and inability to prosecute the remaining claims, Plaintiff-

---

[1] <u>ROA.601</u>.
[2] <u>ROA.598</u>–99.
[3] <u>ROA.601</u>.

Appellant asserts that the district court's Order of Dismissal is an appealable final order over which this Court can and should exercise jurisdiction.

Should the Court disagree, Appellant requests in the alternative that this case be remanded for the limited purpose of seeking a statement of finality from the district court, a dismissal of Hines with prejudice, and/or the severance of the claims against Harris County, Ed Gonzalez, and Mark Cannon in order to satisfy the finality requirement.

## STATEMENT OF THE ISSUES

1. Whether Appellant stated plausible claims against Appellees Cannon and Gonzalez that overcome their qualified immunity defense.
2. Whether Appellant stated plausible claims against Appellee Harris County.
3. Whether the legal fiction of qualified immunity should continue to exist in this Circuit.
4. Whether there was an appealable final decision giving this Court jurisdiction (*see* § Jurisdictional Statement, *supra*).

# STATEMENT OF THE CASE

**Course of Proceedings**

This civil rights case was originally filed on January 30th, 2022,[4] and amended twice, the most recent complaint being filed on June 27th, 2022.[5] The second amended complaint was filed after the district court dismissed the claims against Harris County, Ed Gonzalez, and Mark Cannon without prejudice and with permission to amend.[6] Mark Cannon moved to dismiss the second amended complaint on July 6th, 2022,[7] and Ed Gonzalez and Harris County moved to dismiss on July 25th, 2022.[8] Appellant responded to both motions on August 19th, 2022,[9] and Appellees jointly replied. On August 26th, 2022.[10] The district court dismissed Harris County, Ed Gonzalez, and Mark Cannon with prejudice on September 6th, 2022,[11] Appellant voluntarily dismissed Michael Hines on May 11th, 2023,[12] and

---

[4] <u>ROA.2</u> (Doc. 1).
[5] <u>ROA.6</u> (Doc. 37).
[6] <u>ROA.5</u> (Doc. 32).
[7] <u>ROA.6</u> (Doc. 39).
[8] <u>ROA.6</u> (Doc. 40).
[9] <u>ROA.6</u> (Doc. 44).
[10] <u>ROA.7</u> (Doc. 46).
[11] <u>ROA.7</u> (Doc. 47).
[12] <u>ROA.7</u> (Doc. 52).

the district court issued its order of dismissal on May 15th, 2023.[13]

Appellant timely filed her Notice of Appeal on June 13th, 2023.[14]

**Statement of Facts**

On February 23rd, 2020, Deputies Hines and Cannon were working off-duty at a Harris County Sheriff's Office (HCSO)-approved job at a bar called "The Address."[15] Both Deputies were wearing their usual HCSO duty uniforms with HCSO insignia, HCSO-issued guns, HCSO badges, and driving marked HCSO squad cars.[16] Although visually indistinguishable from on-duty officers to the outside observer, Hines and Cannon were both aware that because they were off duty, their activities and location were not being monitored by HCSO dispatch, they were not required to report their actions or activities to HCSO, and that they are conceptually considered private actors operating private vehicles while not on duty.[17]

Shanita Terrell was also at The Address that night as a patron, where one of her cousins works.[18] When she left the bar, there was visibly and audibly something wrong, indicating that she was not in her usual state of mind.[19] Her appearance and actions were consistent with someone under the

---

[13] ROA.7–8 (Doc. 53).
[14] ROA.8 (Doc. 54).
[15] ROA.386–87.
[16] ROA.386–87.
[17] ROA.386–87.
[18] ROA.387.
[19] ROA.387.

influence of Rohypnol (commonly known as "rufies") or another "date-rape" drug, which mimics the alcohol intoxication in many ways.[20]

Deputies Hines and Cannon, by words and actions, forced Ms. Terrell into the front seat of Deputy Hines's squad car over her clear, unambiguous, and repeated protest, claiming Hines would take her home.[21] Although Ms. Terrell clearly did not want to get into Hines's squad car, she was ordered to do so and believed that she was either under arrest or would be arrested for refusing.[22]

When Ms. Terrell woke up the next morning in her bed, she felt pain in her vaginal area, and went to a hospital, where a rape kit was utilized that revealed semen belonging to Deputy Hines on one of her undergarments.[23] Ms. Terrell did not consent to sexual intercourse with Hines at any point, nor was she capable of giving consent in her state of mind.[24]

Ms. Terrell lacked the memory of this sexual encounter with Hines in a manner consistent with someone that had been given a date-rape drug.[25] Appellant pled that at a minimum, Hines and Cannon were aware that she was displaying symptoms of a date-rape drug, or alternatively gave Ms. Terrell the date-rape drug without her knowledge or consent, and forced her

---

[20] ROA.387–88.
[21] ROA.388.
[22] ROA.388.
[23] ROA.388.
[24] ROA.388.
[25] ROA.389.

into the front seat of Hines's squad car so that Hines could sexually assault her.[26]

Even if Hines and Cannon believed Ms. Terrell was merely drunk (which Appellant does not concede), they had numerous options at their disposal to prevent Ms. Terrell from driving home, including hailing a rideshare service, requesting an on-duty officer provide a courtesy ride, going on-duty themselves to provide a courtesy ride, or bringing her to the Sobering Center at the Houston Recovery Center, which is well known by area law enforcement officers like Hines and Cannon.[27]

Since filing the Notice of Appeal, Michael Hines pled guilty to felony attempted sexual assault for the series of events at issue here.[28]

**Standard of Review**

On appeal, motions to dismiss are considered *de novo*.[29]

On a motion to dismiss for failure to state a claim, a court may only dismiss a complaint as a matter of law where the plaintiff fails to state a claim upon which relief may be granted.[30] A complaint must survive when it

---

[26] ROA.389.

[27] ROA.389–90.

[28] The Court may take judicial notice of this fact under Federal Rule of Evidence 201; Appellant provides a certified copy of the order as a courtesy to the Court and the other Parties, attached as an Appendix.

[29] *Haase v. Countrywide Home Loans, Inc.*, 748 F.3d 624, 630 (5th Cir. 2014) (citation omitted).

[30] Fed. R. Civ. P. 12(b)(6).

contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[31] Put differently, "[a] claim may *not* be dismissed unless it appears *certain* that the plaintiff cannot prove *any* set of facts that would entitle [them] to legal relief."[32] As a result, motions to dismiss are "viewed with disfavor" and "rarely granted" in this Circuit.[33] The Court must accept the Plaintiff's well-pled facts as true, and view them in the light most favorable to the Plaintiff, making reasonable inferences and resolving contested facts and factual ambiguities in the Plaintiff's favor.[34] Plausibility under this standard is unrelated to probability, but "asks for more than a sheer possibility that a defendant has acted unlawfully."[35] The inquiry is generally limited to the contents of the pleading and its attachments.[36] Read in combination with <u>Federal Rule of Civil Procedure 8(a)(2)</u>, "[s]pecific facts are not necessary," as the pleadings need only provide "fair notice of what the . . . claim is and the grounds upon which it rests."[37]

---

[31] *Ashcroft v. Iqbal*, <u>556 U.S. 662, 678</u> (2009) (quoting *Bell Atl. Corp. v. Twombly*, <u>550 U.S. 554, 570</u> (2007)).

[32] *In re Supreme Beef Processors, Inc.*, <u>468 F.3d 248, 251</u> (5th Cir. 2006) (internal citation omitted) (emphasis added).

[33] *Harrington v. State Farm Fire & Cas. Co.*, <u>563 F.3d 141, 147</u> (5th Cir. 2009) (internal quotations and citations omitted).

[34] *Walker v. Beaumont Indep. Sch. Dist.*, <u>938 F.3d 724, 735</u> (5th Cir. 2019) (citations omitted).

[35] *Ashcroft*, <u>556 U.S. at 678</u> (citing *Twombly*, <u>550 U.S. at 556</u>).

[36] *Brand Coupon Network LLC v. Catalina Mktg. Corp.*, <u>748 F.3d 631, 635</u> (5th Cir. 2014).

[37] *Erickson v. Pardus*, <u>551 U.S. 89, 93</u> (2007) (per curiam) (internal citations omitted).

In cases like this, where facts related to municipal liability are alleged, the Court should give plaintiffs the benefit of the doubt where possible, as they have not yet had the opportunity for discovery.[38] Indeed, the Supreme Court has reiterated time and again that § 1983 cases are not subject to any kind of heightened pleading standard, as long as the facts alleged make a constitutional claim.[39]

## SUMMARY OF THE ARGUMENT

Appellant will show four things. First, she will show that Deputy Cannon was clearly acting under color of state law when he used his duty uniform, equipment, and squad car to force Appellant into the front seat of Hines's squad car. Second, she will show that Deputy Cannon's actions were clearly a seizure under the Fourth Amendment, and that because Hines was off duty, Cannon's actions in forcing Appellant into Hines's car when she committed no crime is effectively an abduction, so the unlawful seizure clearly overcomes Cannon's qualified immunity defense. Third, she will show that Sheriff Gonzalez's policies clearly make him liable as a supervisor. And finally, she will show that Harris County's policies and failure to train both caused the constitutional injury and were deliberately indifferent.

---

[38] *Lipman v. Budish*, <u>974 F.3d 726, 748</u> (6th Cir. 2020) ("At the motion-to-dismiss stage, without the benefit of discovery, these facts are enough to draw the reasonable inference that this custom was widespread . . . and known to policymakers."); *Thompson v. City of Galveston*, <u>800 F. Supp. 2d 826, 844</u>–45 (S.D. Tex. 2011).

[39] *Johnson v. City of Shelby*, <u>574 U.S. 10, 11</u> (2014) (per curiam) (citations omitted).

# Argument

1. **Appellant's claims against the Cannon and Gonzalez should have easily survived, and qualified immunity has outlived its usefulness.**

   *1.1. Deputy Cannon was unquestionably "acting under color of state law."*

All § 1983 claims are and must be predicated on the fact that the defendant was "acting under color of state law."[40] In cases that fall into the gray area between the defendant's private and state conduct, this Court provided the following guidance:

> Generally, if an officer is performing their official duties, their acts are included whether they hew to the line of their authority or overstep it, though acts of officers in the ambit of their personal pursuits are plainly excluded. That said, even if an officer acts for purely personal reasons, he or she may still act under color of law if they are acting by virtue of state authority.

> Importantly here, it is clear that whether a police officer is acting under color of law does not depend on duty status at the time of the alleged violation. Rather, to determine whether an officer acted under color of law, we must consider: (1) whether the officer misused or abused his official power and (2) if there is a nexus between the victim, the improper conduct, and the officer's performance of official duties.[41]

---

[40] *West v. Atkins*, <u>487 U.S. 42, 48</u> (1988).

[41] *Gomez v. Galman*, <u>18 F.4th 769, 776</u> (5th Cir. 2021) (cleaned up) (citing *Screws v. United States*, <u>325 U.S. 91, 111</u> (1945); *Bustos v. Martini Club, Inc.*, <u>599 F.3d 458, 464</u>–65 (5th Cir. 2010); *United States v. Tarpley*, <u>945 F.2d 806, 809</u> (5th Cir. 1991)).

In *Gomez*, the Court determined that at the pleading stage, the plaintiff established that the defendant officers were acting under color of state law, in large part, "because the[ defendants] acted like police officers, [the plaintiff] believed he was not free to leave, and did as he was ordered."[42] The Court found it significant that the plaintiff credibly alleged that he believed that the defendants were acting as police officers, and noted that "the complaint offers no reason for Gomez to obey Galman and Sutton unless they were acting by virtue of state authority."[43]

Based on facts pled under the relevant standard described *surpa*, Deputy Cannon was unquestionably acting under color of state law. In *Gomez*, the officers were in plain clothes, did not announce themselves at any point, and were considered to be acting under color of state law merely "because they acted like police officers."[44] Here, both Deputies, while working at a department-approved job, were wearing their full duty uniforms and equipment, drove their squad cars, and "acted like police officers" by ordering Ms. Terrell "by words and actions" into the front of Hines's squad car.[45] Much like the defendants in *Gomez*, Hines and Cannon here were certainly acting with an "air of authority," that should similarly be considered

---

[42] *Id.* (cleaned up).

[43] *Id.* (cleaned up) (citing *Tarpley*, <u>945 F.2d at 809</u>).

[44] *Gomez*, <u>18 F.4th at 774</u> (cleaned up).

[45] <u>ROA.386</u>–87.

"sufficient to allow this matter to proceed to discovery, where additional fact-finding may support—or vitiate—[Ms. Terrell's] claims."[46]

Notably, the district court agreed in both orders granting Cannon's motions that Deputy Cannon was acting under color of state law.[47]

>    *1.2. Deputy Cannon may be held liable for his unlawful seizure of Ms. Terrell under the 4th Amendment, and Ms. Terrell has overcome his assertion of the qualified immunity defense.*

The Fourth Amendment to the U.S. Constitution protects the public from unreasonable searches and seizures by the government.[48] In articulating this right, the U.S. Supreme Court has explained that "a person has been seized within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave."[49] In order for a seizure to occur, there must be "a governmental termination of freedom of movement through means intentionally applied."[50]

In determining whether there was a seizure under this standard, there need not be any use of force, display of a weapon, or physical prevention

---

[46] *Gomez*, 18 F.4th at 777.

[47] ROA.574–75.

[48] U.S. Const. Amend. IV.

[49] *California v. Hodari D.*, 499 U.S. 621, 627–28 (1991) (quotations and alterations omitted) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980), citing *Florida v. Royer*, 460 U.S. 491, 502 (1983) (opinion of White, J.)).

[50] *Brower v. County of Inyo*, 489 U.S. 593, 597 (1989) (emphasis omitted).

from escape for a government official to violate the Fourth Amendment.[51] Instead, the Fourth Amendment may be violated when a government official's "*words and actions* would have conveyed [] to a reasonable person" that they were "being ordered to restrict [their] movement."[52] An example of such a "show of authority" is "the use of language or tone of voice indicating that compliance with the officer's request might be compelled."[53]

The Court in *Brower* further clarified that:

> We think it enough for a seizure that a person be stopped by the very instrumentality set in motion or put in place in order to achieve that result. It was enough here, therefore, that, according to the allegations of the complaint, Brower was meant to be stopped by the physical obstacle of the roadblock -- and that he was so stopped.[54]

With respect to more passive or non-forceful shows of authority, the Court has also determined that "one sitting in a chair may submit to authority by not getting up to run away,"[55] and that "policemen do not command 'Stop!' expecting to be ignored, or give chase hoping to be outrun, [so] it fully suffices to apply the deterrent [of Fourth Amendment liability] to their genuine, successful seizures."[56] Indeed, this Court has recognized that "[s]ubstantial authority from both the Supreme Court and our court

---

[51] *Mendenhall*, <u>446 U.S. at 553</u>–56.

[52] *Hodari D.*, <u>499 U.S. at 628</u> (emphasis added).

[53] *Mendenhall*, <u>446 U.S. at 554</u> (citations omitted).

[54] <u>489 U.S. at 599</u>.

[55] *Brendlin v. California*, <u>551 U.S. 249, 262</u> (2007).

[56] *Hodari D.*, <u>499 U.S. at 627</u>.

establishes that voluntary submissions to a show of state authority can constitute seizures for Fourth Amendment purposes."[57] It also reinforces the fact that the test here is an objective one.[58]

Applying the actual facts of the complaint to the Fourth Amendment standard, Ms. Terrell was unquestionably seized. Because she was forced into a police squad car by Cannon, she—very reasonably—"believed that she was not free to leave."[59] Her freedom of movement was terminated by intentional means, and that means consisted of Cannon's "words and actions" that would have conveyed to anyone that they were not free to leave.[60] Thus, his actions confining her to Hines's squad car make a clear Fourth Amendment violation.

But beyond that, Appellant alleged that Cannon knew of Hines's off-duty status at the time he forced Ms. Terrell into his car, and that he was aware that because Hines was off duty, he should be considered a private citizen.[61] Put differently, forcing Ms. Terrell into the front seat of Hines's squad car here is equivalent to forcing Ms. Terrell into the front seat of a random employee or patron's private car that has no law enforcement background or ties. Had Cannon helped safely load Ms. Terrell into an on-duty law enforcement officer's squad car, the situation would be different,

---

[57] *McLin v. Ard*, <u>866 F.3d 682, 691</u> (5th Cir. 2017) (collecting cases).

[58] *Id.*

[59] <u>ROA.386</u>–90; *see Hodari D.*, <u>499 U.S. at 627</u>–28.

[60] <u>ROA.386</u>–90.

[61] <u>ROA.386</u>–90.

because on-duty officers are subject to notification, monitoring, and accountability requirements that would have afforded Ms. Terrell some level of protection from Hines and likely prevented him from carrying out the assault.[62]

In reality, Cannon forced Ms. Terrell against her will into the car of one of the bar's bouncers.[63] That the bouncer is also an off-duty Harris County Sheriff's Deputy is irrelevant to the unlawful seizure claim against Cannon except to the extent that Cannon and Hines used their equipment, appearance, and authority to force Ms. Terrell in to Hines's car, which turned this possible tort claim into a civil rights claim.

As a result, Cannon's objective actions were not merely preventing Ms. Terrell from driving home intoxicate, but instead show Cannon forcing Ms. Terrell into a stranger's car against her will, effectively facilitating an abduction. Again, that the abduction had the façade of law enforcement activity does not affect the analysis or make such a clearly unreasonable action reasonable.

Appellant also alleged that she was likely under the influence of a date-rape drug, and included an alternative allegation that Hines specifically may have given her a date-rape drug without her knowledge or consent as part of a plan to sexually assault Ms. Terrell.[64] These allegations provide objective

---

[62] <u>ROA.386</u>–90.

[63] <u>ROA.386</u>–90.

[64] <u>ROA.386</u>–90.

facts—that Ms. Terrell was drugged and that Hines drugged her as part of a plan—from which this Court could reasonably infer that Cannon, by acting in concert with Hines, was aware of and participated in this plan. Taken together in the light most favorable to Appellant, these facts cannot be construed as reasonable conduct on the part of Cannon—no reasonable officer can legitimately help a private citizen abduct someone as part of a plan to commit sexual assault, even if that person appears visibly intoxicated.[65]

But Cannon also raised the affirmative defense of qualified immunity below. In this analysis, the Court must balance both "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."[66] At this stage, the plaintiff must first plead facts, as they would otherwise need to, that demonstrate unconstitutional conduct.[67] They then must additionally show that on *their facts*, the constitutional violation was "clearly established."[68] In order to be clearly established, "the unlawfulness of the challenged conduct must be beyond debate[, which] leaves the rare possibility [of] an obvious case . . . [where] the unlawfulness

---

[65] <u>ROA.386</u>–90.

[66] *Pearson v. Callahan*, <u>555 U.S. 223, 231</u> (2009).

[67] *Joseph v. Bartlett*, <u>981 F.3d 319, 329</u>, <u>329</u> n. 18 (5th Cir. 2020).

[68] *Id.* at 330 (citing *Tolan v. Cotton*, <u>572 U.S. 650, 656</u>–57 (2014) (instructing courts to rely on the plaintiff's version of the facts when evaluating clearly established law); *Deville v. Marcantel*, <u>567 F.3d 156, 164</u> (5th Cir. 2009) (per curiam)).

of the challenged conduct is sufficiently clear even though existing precedent does not address similar circumstances."[69] Generally though, qualified immunity "requires the plaintiff to identify a case—usually, a body of relevant case law—in which an officer acting under similar circumstances" was held liable, and the cases cited need not be *directly* on point.[70] When it comes to qualified immunity, "[t]he central concept is 'fair warning.'"[71]

Here, the violation is both obvious and supported by much caselaw. First of all, the violation is obvious because Cannon himself conceded below that "Ms. Terrell was not put in the car because of a crime or because of probable cause."[72] Absent any justifiable reason to seize Ms. Terrell or detain her in Hines's squad car, his choice to detain her cuts against the very heart of what the Fourth Amendment seeks to prohibit. Moreover, the numerous cases cited above clearly establish both Ms. Terrell's rights in this situation and make it clear to every reasonable officer that detaining Ms. Terrell in this manner is unconstitutional.[73] Moreover, *Gomez* provides a case on point.[74] That case also involve police officers at a bar, interacting with a bar patron, using their authority to harm and detain that patron without cause.[75] Thus, Ms. Terrell easily overcomes Cannon's qualified immunity defense.

---

[69] *Id.* (quotations, citations, and alterations omitted).

[70] *Id.* (quotations, citations, and alterations omitted).

[71] *Cooper v. Brown*, 844 F.3d 517, 524 (5th Cir. 2016) (citations omitted).

[72] ROA.268.

[73] *See* nn. 40–58, *supra*.

[74] 18 F.4th 769.

[75] *Id.* at 774–77.

Put differently, it is beyond debate that Ms. Terrell was seized within the meaning of the Fourth Amendment.[76] The question then becomes whether any reasonable officer could have believed that forcing Ms. Terrell into the vehicle of a private citizen was lawful.[77] Appellant again asserts that Cannon's conduct was an obvious violation of the Fourth Amendment, and the new facts alleged in her second amended complaint make that violation even more obvious. There are no set of circumstances that Appellant can conceive in which forcing a person against their will into a private actor's private vehicle would be a reasonable means of conducting a Fourth Amendment seizure, especially where the seizure occurs without probable cause and outside the context of a crime at all.

Her claim is also supported by yet more caselaw. "Absent probable cause, warrantless searches and seizures are presumptively invalid or '*per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions.'"[78] Cannon has identified no such exception at any point. The only justification provided

---

[76] *California v. Hodari D.*, <u>499 U.S. 621, 627</u>–28 (1991) ("a person has been seized within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.") (quotations and alterations omitted) (quoting *United States v. Mendenhall*, <u>446 U.S. 544, 554</u> (1980), citing *Florida v. Royer*, <u>460 U.S. 491, 502</u> (1983) (opinion of White, J.)); <u>ROA.386</u>–90.

[77] *Anderson v. Creighton*, <u>483 U.S. 635, 641</u> (1987).

[78] *Keller v. Fleming*, <u>952 F.3d 216, 223</u> (5th Cir. 2020) (quoting *Katz v. United States*, <u>389 U.S. 347, 357</u> (1967)).

below was that preventing a visibly intoxicated person from driving home should be considered reasonable. This justification fails for several reasons, beyond the fact that it was not tied to one of the "few specifically established and well delineated exceptions" to the probable cause requirement.[79]

First, even assuming *arguendo* that this justification was sufficient under the law clearly established by *Katz*, the means of effecting the seizure must also be evaluated as to "whether it was reasonably related in scope to the circumstances which justified" the seizure, and "whether the police acted unreasonably in failing to recognize or to pursue" an alternative.[80] Forcibly putting Ms. Terrell into a stranger's car against her will—or, facilitating in her abduction—is not "reasonably related in scope" to preventing her from driving away in her own car: while doing so achieved the result, it is as reasonably related in scope to the seizure as punching her in the face to knock her out in order to achieve the same result. Moreover, Appellant identified several alternative means of achieving the same result that Cannon was "unreasonable[] in failing to recognize or to pursue," including: doing what any modern bar-goer would do and hail an Uber, Lyft, or other rideshare; hailing a taxi; sending Ms. Terrell home with or at least putting her under the care of her cousin; simply ordering Ms. Terrell to wait and sober up; or getting her to the sobering center by either going on duty and

---

[79] *Katz*, 389 U.S. at 357.

[80] *United States v. Sharpe*, 470 U.S. 675, 682, 687 (1985).

taking her there himself, or by hailing an on-duty officer to do the same using the proper protocols.[81]

Second, the second amended complaint, as described *supra*, support the reasonable inference that Cannon's objective conduct was in service of Hines's alleged plan to drug and sexually assault Ms. Terrell.[82] Under those facts, there is no objective basis for the justification in the first place, meaning that the seizure must be considered *per se* unreasonable.[83]

Since both *Sarpe* and *Katz* place Cannon's conduct squarely outside the realm of constitutional permissibility, and since the violation itself was obvious, Appellant easily overcomes Cannon's qualified immunity defense and has stated an extremely plausible claim for relief.

### 1.3. *Sheriff Gonzalez may be held liable as a supervisor.*

Appellee Gonzalez may be liable as a supervisor where he "affirmatively participates in acts which cause a constitutional deprivation, or implements an unconstitutional policy that causally result in the plaintiff's injuries."[84]

Ms. Terrell specifically alleges that Gonzalez fails to investigate or discipline officers that have been criminally charged or accused of policy violations in general, and does not do so even when an accusation has been

---

[81] ROA.386–90.

[82] ROA.386–90.

[83] *Katz*, 389 U.S. at 357.

[84] *Casanova v. City of Brookshire*, 119 F. Supp. 2d 639, 660 (S.D. Tex. 2000) (citing *Baker v. Putnal*, 75 F.3d 190, 199 (5th Cir. 1996)).

brought before a grand jury.[85] Even if a grand jury "no-bills" a criminal defendant, the evidence shown is still secret, and could show policy violations or punishable acts by the defendant employee.[86] While such a serious accusation is not a guarantee of guilt or future behavior, the decision not to even *investigate* whether Hines had violated County policy—let alone committed a crime—is deliberately indifferent to the citizens to whom he may present a risk. Gonzales should not be able to turn a blind eye to a credible allegation that could indicate behavior that would put Harris County citizens at risk, and the policy to do so anyway is what Plaintiff alleges is deliberately indifferent. That policy unconstitutionally puts citizens at risk of the abusive proclivities of Gonzalez's deputies, and that policy directly resulted in Ms. Terrell's injuries here because Gonzalez ignored the substantial criminal allegations against Hines of the sexual assault of a minor.[87] Thus, he may be individually liable for the violation at issue here.

Ms. Terrell also overcomes Gonzalez's qualified immunity defense on obviousness; no reasonable supervisor in Gonzalez's position would believe that it is constitutional to turn a blind eye to criminal allegations against one's employees, especially when those employees are bestowed with the authority of the state, weapons, and the means to detain and transport people against their will.

---

[85] ROA.391.

[86] ROA.391.

[87] ROA.386, 391.

*1.4. Qualified immunity is a fundamentally flawed doctrine that should no longer exist, or at the very least should not apply outside of the "heat-of-the-moment" decisions they were created to protect.*

A foundational principle of the legal system is that "where there is a legal right, there is also a legal remedy by suit or action at law, whenever that right is invaded. . . . for it is a settled and invariable principle . . . that every right, when withheld, must have a remedy, and every injury its proper redress."[88] Based on that bedrock understanding of the nature of legal rights, it must be the case that the qualified immunity defense has the power to negate the existence of constitutional rights altogether in certain cases by recognizing the existence of constitutional harms, but foreclosing the availability of a remedy. Whether or not a person's rights are erased is determined by an ultimately arbitrary standard—clear establishment—that also has the effect of shrinking the number of actionable claims as society and technology evolve past the factual scenarios that can currently be said to "clearly establish" any given right. Appellate judges are also beginning to question the propriety of the doctrine.[89]

Indeed, qualified immunity is a "legal fiction" that came from the faulty interpretation of § 1983.[90] "[S]tatutory interpretation, as we always say,

---

[88] *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 163 (1803).

[89] *See, e.g., Sosa v. Martin Cty.*, _ F.4th _, No. 20-12781, 2023 U.S. App. LEXIS 1494, at *16–17 (11th Cir. Jan. 20, 2023) (en banc) (Jordan, J., concurring in the judgment).

[90] *Id.*; *accord Werner v. Wall*, 836 F.3d 751, 768 (7th Cir. 2016) (Hamilton, J., dissenting).

begins with the text,"[91] and often "ends" there as well.[92] And § 1983's text is clear: "Every person who, under color of *any* statute . . . subjects . . . *any* citizen of the United States . . . to the deprivation of *any* rights, privileges, or immunities . . . shall be liable to the party injured in an action at law."[93] Nowhere in that text does Congress mention or provide for immunity.[94] Moreover, § 1983's original text held actors liable when acting under color of state law, "any such law, statute, ordinance, regulation, custom, or usage of the State to the contrary notwithstanding."[95] That phrase was "meant to encompass" existing common law defenses and immunities—and make them unavailable to defendants.[96] As a result, "modern [qualified] immunity jurisprudence is not just *a*textual but *counter*textual."[97]

Moreover, decisions that are not the type of split-second, heat-of-the-moment choices made by officers in dangerous situations need not be afforded the same protections should those protections continue to exist at

---

[91] *Ross v. Blake*, 578 U.S. 632, 638 (2016).

[92] *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 553 (2014).

[93] 42 U.S.C. § 1983 (emphasis added).

[94] *See, e.g.*, *Hoggard v. Rhodes*, 141 S. Ct. 2421, 2421 (2021) (Thomas, J., concurring in denial of certiorari) (contemporary two-part qualified immunity "test cannot be located in § 1983's text and may have little basis in history."); William Baude, *Is Qualified Immunity Unlawful?*, 106 Calif. L. Rev. 45, 47 (2018) (examining and rejecting various rationales for qualified immunity as a proper textualist interpretation of §1983).

[95] Alexander A. Reinert, *Qualified Immunity's Flawed Foundation*, 111 Calif. L. Rev. 201, 235 (2023) (quoting Civil Rights Act of 1871, ch. 22, § 1, 17 Stat. 13).

[96] *Id.*

[97] *Rogers v. Jarrett*, 63 F.4th 971, 980 (5th Cir. 2023) (emphasis in original) (Willett, J., dissenting).

all; an officer who, as here, has ample time to check the legality of their actions should not avoid liability merely because they chose not to do so.

**2. Appellant's *Monell* claims against the Harris County are also more than plausible.**

Appellant also seeks to hold Harris County (County) liable under *Monell*. With respect to the *Monell* standard, this Court clarified that:

> [o]ur caselaw establishes three ways of establishing a municipal policy for the purposes of *Monell* liability. First, a plaintiff can show "written policy statements, ordinances, or regulations." Second, a plaintiff can show "a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy." Third, even a single decision may constitute municipal policy in "rare circumstances" when the official or entity possessing "final policymaking authority" for an action "perform the specific act that forms the basis of the § 1983 claim."[98]

A municipality may also be liable where its "decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983."[99] Failure to train establishes liability where a municipality "disregard[s] a known or obvious consequence of [its] action" such that it is deliberately indifferent to the rights of those with whom the untrained employees interact.[100]

---

[98] *Webb v. Town of Saint Joseph*, <u>925 F.3d 209, 214</u>–15 (5th Cir. 2019) (citations omitted).

[99] *Connick v. Thompson*, <u>131 S. Ct. 1350, 1359</u> (2011).

[100] *Id.* (internal quotations, citations, and alterations omitted).

To the extent that liability here stems from the County's failure to adopt certain training and policies in several areas, the absence of or failure to adopt an appropriate policy can be considered a policy in the same way that an affirmative policy is, especially when the County was aware of the need for a policy.[101] Notably, the Seventh Circuit in *Glisson* looked at Indiana Department of Corrections' guidelines as evidence that a jail medical provider had the knowledge of the need for a policy but chose not to act.[102] More strikingly in the context of the case at bar, the *en banc* Seventh Circuit in *J.K.J.* looked at the risk of sexual assault in a county jail, despite policies against such conduct, and determined that because it took no action with respect to detection, prevention, *or training*, that a jury was reasonable in holding the county liable under *Monell*.[103]

Here, Harris County may be liable in several ways. First, particularly egregious facts such as those presented here may subject it to failure to train liability for that officer's actions.[104] Put differently, the outrageousness of the action is itself proof of the failure to train; that Hines and Cannon believed it acceptable to use their authority to force Ms. Terrell into Hines's squad car, and that Hines believed it acceptable to sexually assault her while she

---

[101] *J.K.J. v. Polk County*, 960 F.3d 367, 370, 375–76, 384 (7th Cir. 2020) (en banc) (internal citations omitted); *Glisson v. Indiana Department of Corrections*, 849 F.3d 372, 378–80, 382 (7th Cir. 2017) (internal citations omitted).

[102] *Glisson*, 849 F.3d at 380.

[103] *J.K.J.*, 960 F.3d at 370, 384.

[104] *Pineda v. City of Houston*, 124 F. Supp. 2d 1057, 1068 (S.D. Tex. 2000).

was detained is proof of the County's failure to train against such action.[105] And second, the situation itself showed deliberate indifference to both Ms. Terrell's rights to freedom, bodily integrity, and humane conditions as a detainee, but also showed deliberate indifference to the public by failing to properly screen and investigate their deputies and enforce appropriate standards for the treatment of detainees generally.[106]

Moreover, Appellant pled that the County's policies with respect to failing to investigate officers accused of crime, failing to conduct IAD investigations when the complainant has been charged with a crime, and having inadequate policies with respect to (among other things) reporting and investigating sexual assaults and officer conduct on extra jobs all combined to embolden Hines to commit sexual assault through his County-granted authority and equipment and did not equip either Cannon or Hines with the training necessary to take steps to keep Ms. Terrell safe.[107] To the extent that dismissal hinges on a lack of specificity as to the fine details of the policies at issues, the Court should not hold that against Appellant at this point, where she has not had the opportunity to conduct discovery and Appellees exclusively hold the keys to that information.[108]

With respect to inadequate training, Appellant has alleged a lack of training (or at least inadequate training) when it comes to recognizing and

---

[105] ROA.386–91.

[106] ROA.386–91.

[107] ROA.386–91.

[108] *See* § Standard of Review, *supra*.

handling people that have been drugged, when it comes to safely loading people into a squad car, and when it comes to options for keeping intoxicated people both safe and off the road. To the extent that the County knows and approves of officers working second jobs at bars and other locations where alcohol and date rape drugs are present, it has demonstrated deliberate indifference to the high risk that officers will come into contact with people that are intoxicated, including intoxication by date rape drugs.

## Conclusion

For the foregoing reasons, Appellant respectfully requests that this Court **REVERSE** the district court's judgment and **REMAND** for further proceedings. Should the Court decline to exercise jurisdiction over the appeal, Appellant requests in the alternative that this case be **REMANDED** for the limited purpose of seeking a statement of finality from the district court, a dismissal of Hines with prejudice, and/or the severance of the claims against Harris County, Ed Gonzalez, and Mark Cannon in order to satisfy the finality requirement.

*/s/ Alexander C. Johnson*
Alexander C. Johnson
Kallinen Law PLLC
State Bar of Texas
  Bar No. 24123583
alex@acj.legal
511 Broadway Street
Houston, Texas 77012

Telephone: 573.340.3316
**Attorney for Appellant**

*/s/ Randall L. Kallinen*
Randall L. Kallinen
Kallinen Law PLLC
State Bar of Texas
   Bar No. 00790995
attorneykallinen@aol.com
511 Broadway Street
Houston, Texas 77012
Telephone: 713.320.3785
Fax: 713.893.6737
**Attorney for Appellant**

## CERTIFICATE OF SERVICE

I certify that on September 13th, 2023, the foregoing Brief was filed electronically using the Court's CM/ECF system, which will give notice to all counsel of record through the Court's ECF System.

*/s/ Alexander C. Johnson*
Alexander C. Johnson
**Attorney for Appellant**

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of <u>Federal Rule of Appellate Procedure 32(a)(7)(B)</u> because it contains 7,459 words in total.

This brief complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a

proportionally spaced typeface using Microsoft Word version 16, and is set
in Adobe Caslon Pro, size 14.

*/s/ Alexander C. Johnson*
Alexander C. Johnson
**Attorney for Appellant**



| THE STATE OF TEXAS | § | IN THE 228TH DISTRICT | Pgs-7 |
| | § | | |
| V. | § | COURT | DIDADJ |
| | § | | (995) |
| HINES, MICHAEL | § | HARRIS COUNTY, TEXAS | |
| | § | | |
| STATE ID NO.: TX12909749 | § | | |

# ORDER OF DEFERRED ADJUDICATION

| Judge Presiding: | **FRANK AGUILAR** | Date Proceedings Deferred: | **6/26/2023** |
| Attorney for State: | **KIMBERLEY SMITH** | Attorney for Defendant: | **BROUSSARD, STANLEY B.** |

Offense:
**ATT SEX ASSLT (110094)**

| Charging Instrument: | | Statute for Offense: | |
| **INDICTMENT** | | | |

| Date of Offense: | Defendant waived the right to trial by jury and entered the plea below: |
| **2/23/2020** | **GUILTY** |

| Degree of Offense: | Findings on Deadly Weapon: |
| **3RD DEGREE FELONY** | **N/A** |

| 1st Enhancement Paragraph: | Finding on 1st Enhancement Paragraph: |
| **N/A** | **N/A** |

| 2nd Enhancement Paragraph: | Findings on 2nd Enhancement Paragraph: |
| **N/A** | **N/A** |

Terms of Plea Bargain (if any): or ☐ Terms of Plea Bargain are attached and incorporated herein by this reference.
**6 YEARS DADJ**
**REDUCED FROM 2ND DEGREE**

## ADJUDICATION OF GUILT DEFERRED;

### DEFENDANT PLACED ON DEFERRED ADJUDICATION COMMUNITY SUPERVISION.

### PERIOD OF DEFERRED ADJUDICATION COMMUNITY SUPERVISION: 6 YEARS.

### CONFINEMENT AS A CONDITION OF DEFERRED ADJUDICATION COMMUNITY SUPERVISION:

☐ The Court ORDERS Defendant confined _____ DAYS in ☐ THE COUNTY JAIL ☐ A STATE JAIL FACILITY as a condition of deferred adjudication community supervision. The period of confinement as a condition of community supervision starts when Defendant arrives at the designated facility, absent a special order to the contrary.

| Fines: | Court Costs: | Reimbursement Fees: |
| $ **N/A** | $ **270.00** | $ **25.00** |

| Restitution: | Restitution Payable to: N/A |
| $ **N/A** | (See special finding or order of restitution which is incorporated herein by this reference.) |

☒ Defendant is required to register as sex offender in accordance with Chapter 62, Tex. Code Crim. Proc.
**(For sex offender registration purposes only)** The age of the victim at the time of the offense was **31** years .

Was the victim impact statement returned to the attorney representing the State? **N/A**

This cause was called and the parties appeared. The State appeared by her District Attorney as named above.

**Counsel / Waiver of Counsel (select one)**
☒ Defendant appeared with Counsel.
☐ Defendant appeared without counsel and knowingly, intelligently, and voluntarily waived the right to representation by counsel in writing in open court.

Both parties announced ready for trial. Defendant waived the right of trial by jury and entered the plea indicated above. The Court admonished Defendant. It appeared to the Court that Defendant was mentally competent to stand trial, made the plea freely and voluntarily, and was aware of the consequences of the plea. The Court received the plea and entered it of record. Having heard the evidence submitted, the Court FINDS that such evidence

substantiates Defendant's guilt. However, the Court **FINDS** that it is in the best interest of society and Defendant to defer proceedings without entering an adjudication of guilt and to place Defendant on deferred adjudication community supervision.

Therefore, the Court **ORDERS** no judgment entered at this time. The Court further **ORDERS** Defendant placed on deferred adjudication community supervision for the period of time indicated above as long as Defendant abides by the conditions of the deferred adjudication community supervision.

The Court **FINDS** that the Presentence Investigation, if so ordered, was done according to the applicable provisions of Subchapter F, Chapter 42A, Tex. Code Crim. Proc.

After having conducted an inquiry into Defendant's ability to pay, the Court **ORDERS** Defendant to pay the fines, court costs, reimbursement fees, and restitution as indicated above and further detailed below.

The document setting forth the conditions of deferred adjudication community supervision is attached and incorporated herein by this reference.

**Fines Imposed Include (check each fine and enter each amount as pronounced by the court):**

- ☐ General Fine (§12.32, 12.33, 12.34, or 12.35, Penal Code, Transp. Code, or other Code) $ (not to exceed $10,000)
- ☐ Add'l Monthly Fine for Sex Offenders (Art. 42A.653, Code Crim. Proc.) $ As assessed as a Cond. CS ($5.00/per month of community supervision)
- ☐ Child Abuse Prevention Fine (Art. 102.0186, Code Crim. Proc.) **$100**
- ☐ EMS, Trauma Fine (Art. 102.0185, Code Crim. Proc.) **$100**
- ☐ Family Violence Fine (Art. 42A.504 (b), Code Crim. Proc.) **$100**
- ☐ Juvenile Delinquency Prevention Fine (Art. 102.0171(a), Code Crim. Proc.) **$50**
- ☐ State Traffic Fine (§ 542.4031, Transp. Code) **$50**
- ☐ Children's Advocacy Center Fine - as Cond of CS (Art. 42A.455, Code Crim. Proc.) $ As assessed in Cond of CS (not to exceed $50)
- ☐ Repayment of Reward Fine - as Cond of CS (Art. 42A.301 (b) (20), Code Crim. Proc.) $ As assessed as a Cond. CS. (not to exceed $50)
- ☐ DWI Traffic Fine (a/k/a Misc. Traffic Fines) (§ 709.001, Transp. Code) $ (not to exceed $6,000)

## Furthermore, the following special findings or orders apply:

_____

____ . _____

SEE THE ATTACHED FIREARM ADMONISHMENT

**Signed on 6/26/2023**

X _Frank Aguilar_

*FRANK AGUILAR*
JUDGE PRESIDING

Clerk: A MUNOZ

Notice of Appeal Filed: _

Mandate Received: _____ Type of Mandate: _____

After Mandate Received, Sentence to Begin Date is: _____

Jail Credit: _____DAYS

Case Number: 1744307 Court: 228TH Defendant: **HINES, MICHAEL**

Thumbprint

Certified Document Number: 108890352 – Page 2 of 7

## WRITTEN ADMONITION ON INELIGIBILITY TO POSSESS FIREARM OR AMMUNITION

In accordance with Texas Administrative Code §176.1, the Court hereby admonishes you of the following:

1. You are, by entry of order or judgment, ineligible under Texas law to possess a firearm or ammunition.

2. Beginning now, if you possess a firearm or ammunition it could lead to charges against you. If you have questions about how long you will be ineligible to possess a firearm or ammunition, you should consult an attorney.

3. Under Texas Penal Code §46.01(3):

a. "**Firearm**" means any device designed, made, or adapted to expel a projectile through a barrel by using the energy generated by an explosion or burning substance or any device readily convertible to that use

b. "**Firearm**" does not include a firearm that may have, as an integral part, a folding knife blade or other characteristics of weapons made illegal by Penal Code Chapter 46 and that is (1) an antique or curio firearm manufactured before 1899 or (2) a replica of an antique or curio firearm manufactured before 1899 but only if the replica does not use rim fire or center fire ammunition.

The statutes listed below are a starting point for ineligibility to possess a firearm or ammunition. For more information about the laws that make you ineligible to possess a firearm or ammunition, or for more information on how long your ineligibility to possess a firearm or ammunition lasts, the Court recommends you contact an attorney.

• Code of Criminal Procedure Article 17.292 – Magistrate's Order for Emergency Protection
• Code of Criminal Procedure Article 42.0131 – Notice for Persons Convicted of Misdemeanors Involving Family Violence
• Penal Code §46.02 – Unlawful Carrying Weapons
• Penal Code §46.04 – Unlawful Possession of Firearm
• Penal Code §25.07 – Violation of Certain Court Orders or Conditions of Bond in a Family Violence, Child Abuse or Neglect, Sexual Assault or Abuse, Indecent Assault, Stalking, or Trafficking Case
• Family Code §85.026 – Warning on Protective Order

DATE: <u>06/26/2023</u>

DEFENDANT: _[signature]_

CASE NUMBER: 174430701010

DEFENDANT NAME: HINES, MICHAEL

Certified Document Number: 108890352 – Page 3 of 7

| | |
|---|---|
| STATE OF TEXAS | 228TH DISTRICT COURT |
| VS. | OF |
| MICHAEL HINES | HARRIS COUNTY, TEXAS |

---

## CONDITIONS OF COMMUNITY SUPERVISION

---

On this the 26th day of June, 2023, you are granted 6 years community supervision for the FELONY - LEVEL 3 offense of ATTEMPTED SEXUAL ASSAULT in accordance with Article 42A, Texas Code of Criminal Procedure, in the 228TH DISTRICT COURT of Harris County, Texas, by the Honorable Frank Aguilar Judge Presiding. It is the order of this Court that you abide by the following Conditions of Community Supervision:

1.  Commit no offense against the laws of this or any other State or of the United States. You are to report any arrests within 24 hours.

2.  Not use, possess, or consume any illegal drug or prescription drug not currently prescribed to you by a medical professional. You shall bring all current prescription containers to your Community Supervision Officer. If new medication is prescribed, you must bring the new prescription containers by your next scheduled report date.

3.  Report to the Community Supervision Officer as directed for the remainder of the supervision term unless so ordered differently by the Court.

4.  Permit a Community Supervision Officer to visit you at your home, place of employment or elsewhere.

5.  Work at suitable employment and/or attend school full-time. Present either verification of employment or provide a log of all attempts to secure employment to your Community Supervision Officer as directed. You must notify HCCSCD of any change in your employment status by your next scheduled reporting date.

6.  Abide by the rules and regulations of the Harris County Community Supervision and Corrections Department (hereinafter referred to as HCCSCD).

7.  Remain within Harris County, Texas or any counties directly touching Harris County, Texas. You may not travel outside these locations unless you receive prior written permission from the Court through your Community Supervision Officer.

8.  Notify HCCSCD by your next report date of any change in residence.

9.  Submit a non-diluted, valid, unaltered sample for the purpose of alcohol/drug monitoring at the request of the HCCSCD.

10. Support your dependents as required by law. Provide your Community Supervision Officer with proof that you are in compliance with all court-ordered support of dependents.

11. Not ship, transport, possess, receive, or purchase a firearm, altered firearm, or ammunition, or attempt to ship, transport, possess, receive, or purchase a firearm, altered firearm, or ammunition.

# CONDITIONS OF COMMUNITY SUPERVISION

Defendant **Michael Hines**                    Cause **174430701010**

12.  Pay all fees through HCCSCD. All payments MUST be in the form of a Money Order, Cashier's Check or credit card. Online payments may be made with a credit card at PAYCSCD.COM. A $2.00 transaction fee will be charged by HCCSCD to process each payment.

13.  Pay a Supervision Fee at the rate of $60.00 per month for the duration of your community supervision beginning 08/01/2023 to HCCSCD.

14.  Pay a $12.50 fee for a Client Card by 07/15/2023 to HCCSCD if the client does not have a valid state issued Driver's License or Texas ID Card.

15.  Pay a fine of $.00 and Court Costs at the rate of $30.00 per month beginning 07/26/2023 to Harris County through HCCSCD. Court grants credit for 0 days served.

16.  Pay $10.00 per month to cover expenses of drug testing beginning 08/01/2023.

17.  Report in person to HCCSCD to provide a DNA sample to the Department of Public Safety at the direction of and through HCCSCD for the purpose of creating a DNA Record by 09/01/2023 and pay a fee by this date of $25.00 unless a sample has already been submitted under other state law.

18.  Submit to an assessment through HCCSCD Assessment Unit as directed. Participate and successfully complete any program(s) as indicated by the assessment or until further order of the court.

19.  Pay a one-time fee of $100.00 to HCCSCD for the purpose of screening and assessment.

20.  Submit to an evaluation of your Educational skill level by 07/15/2023. If it is determined that you have not attained the average skill of students who have completed the sixth grade in public schools in this State, you shall participate in a program that teaches functionally illiterate persons to read. If you are non-English speaking, you will participate in English as a Second Language (ESL) program, if it is determined there is a need in order for you to meet the state mandate beginning upon referral until successfully discharged or released by further order of the Court.

21.  Submit to any program of psychological and physiological assessment at the direction of your Community Supervision Officer, including the plethysmograph and/or polygraph, to assist in treatment, planning and case monitoring.

22.  Not view own or possess pornographic materials. In addition you may not frequent sexually oriented establishments.

23.  Comply with sex offender registration procedures as required by the laws of this or any other State in which you reside beginning 06/26/2023 and at any time thereafter as directed by your Community Supervision Officer.

24.  Report in person to the HCCSCD Sex Offender Unit within 24 hours or the following business day by 10:00 am for the purpose of completing your sex offender registration and completing the Static 99 risk assessment.

Defendant **Michael Hines**                    Cause **174430701010**

25.    Not enter or remain within a sexually oriented business. A sexually oriented business is a commercial enterprise, the primary business of which is the offering of a service or the selling, renting or exhibiting of devices or any other items intended to provide sexual stimulation or sexual gratification to a patron including, but not limited to: massage parlors sex parlors nude studios modeling studios love parlors adult bookstores adult movie theaters adult video arcades adult motels adult cabarets escort agencies and sexual encounter centers.

26.    Participate in Sex Offender Treatment beginning immediately upon referral. Attend treatment and aftercare with a State of Texas registered Sex Offender Provider as recommended. Comply with all program rules regulations and guidelines until successfully discharged or released by further order of the Court.

27.    Participate in the HCCSCD Sex Offender Caseload beginning 06/26/2023. Comply with all program rules regulations and guidelines until successfully discharged or released by further order of the Court.

28.    Participate in the HCCSCD Community Service Restitution Program (CSRP). You shall perform 150 hours as directed by HCCSCD CSRP policy. Hours must be completed 60 days prior to termination.

29.    Pay a donation of $500.00 to HOUSTON AREA WOMENS SHELTER by 07/01/2025 through HCCSCD.

30.    PERMANENT TCOLE SURRENDER

# CONDITIONS OF COMMUNITY SUPERVISION

Defendant **Michael Hines**                    Cause **174430701010**

I understand that under the laws of this State, the Court shall determine the terms and conditions of Community Supervision, and may alter or modify said conditions during the period of Community Supervision. I further understand that failure to abide by these Conditions of Community Supervision may result in the revocation of Community Supervision or an adjudication of guilt.

**Court Directive for Release**

Community Supervision expires on June 25, 2029.

_____ *SIGN*        06/26/2023
Michael Hines                                    Date Signed
Defendant

Signed this the June 26, 2023.

_____ *SIGN*
Frank Aguilar
Presiding Judge

_____        06/26/2023
...lica Salvador                                 Date Signed
. Liaison Officer

SPN **02963595**

Plea **Guilty**



I, Marilyn Burgess, District Clerk of Harris County, Texas certify that this is a true and correct copy of the original record filed and or recorded in my office, electronically or hard copy, as it appears on this date.
Witness my official hand and seal of office this   August 24, 2023

Certified Document Number:        108890352 Total Pages:  7

Marilyn Burgess, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 51.301 and 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**