No. 23-20281

# IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

SHANITA TERRELL,

Plaintiff-Appellant,

*versus*

HARRIS COUNTY; MICHAEL HINES; MARK CANNON; ED GONZALEZ,

Defendants-Appellees.

On Appeal from the United States District Court
for the Southern District of Texas
Civil Action No. 4:22-cv-302

APPELLANT SHANITA TERRELL'S PETITION FOR REHEARING EN BANC

*Submitted by*:
Randall L. Kallinen & Alexander C. Johnson
Kallinen Law PLLC
511 Broadway Street
Houston, Texas 77102
Telephone: 713.320.3785
**Attorneys for Appellant**

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in 5th Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

| Appellant: | Counsel for Appellant: |
| --- | --- |
| Shanita Terrell | Randall Kallinen & Alexander Johnson<br>Kallinen Law PLLC, Houston, TX |

| Appellees: | Counsel for Appellees: |
| --- | --- |
| Harris County | Rachel Susan Fraser<br>Harris County Attorney's Office,<br>Houston, Texas |
| Ed Gonzalez | |
| Mark Cannon | Suzanne Rene Bradley<br>Harris County Attorney's Office,<br>Houston, Texas |
| Michael Hines | |

*/s/ Alexander C. Johnson*
Alexander C. Johnson
**Attorney for Appellant**

# RULE 35(B)(1) STATEMENT

In our professional judgment, the questions presented by this petition satisfy the criteria of <u>Federal Rule of Appellate Procedure 35(b)(1)</u>. Petitioner alleged that Deputy Cannon helped Deputy Hines carry out a plan to sexually assault her, and in doing so, used the authority of his position in order to force her, against her will, into the front seat of the off-duty Deputy Hines's squad car. The Panel's published opinion reached its decision to grant qualified immunity in conflict with this Court's own recent precedent, in direct and express contravention of the Supreme Court's articulation of the pleading standard, and by conflating the "color of law" analysis with other issues.

Specifically, the panel's opinion conflicts with this Court's 2022 decision in *Sweetin*, and the Supreme Court's decisions in *Twombly* and *Neitzke*. In *Sweetin*, this Court held that in order to be entitled to the qualified immunity defense, an officer must establish that they were acting within the bounds of their discretionary authority.[1] It was not within Cannon's discretionary authority to force Petitioner into the front seat of a private actor's car,[2] so Cannon should not have been entitled to raise the defense. In *Twombly* and *Neitzke*, the Supreme Court made clear that while courts need not accept legal conclusions as true in a plaintiff's complaint, that "Rule 12(b)(6) does not countenance dismissals based on a judge's disbelief of a complaint's factual

---

[1] *Sweetin v. City of Texas City*, <u>48 F.4th 387, 391</u>–92 (5th Cir. 2022).
[2] *See* <u>Tex. Penal Code § 39.03</u>.

allegations."[3] Here, the Panel correctly noted that Ms. Terrell's allegation that Cannon was working in concert with Hines in order to carry out the sexual assault was indeed a factual allegation, but determined that it was "purely speculative," and "len[t] it no credence."[4]

Moreover, the Panel faced an exceptionally important question of law that it answered incorrectly. Specifically, it faced the question: Can an officer both act under color of law for the purpose of liability under § 1983 *and* pursue private objectives that put their actions outside the scope of their authority? The answer should have been *yes*, because the "color of law" analysis considers different factors than other legal questions implicated by their actions. Instead, the Panel conflated the "color of law" analysis with other legal questions, holding that it could not "construe [the deputies'] actions as if they were private actors" because they "acted under color of law."[5]

---

[3] *Bell Atl. Corp. v. Twombly*, <u>550 U.S. 554, 555</u>–56 (2007) (cleaned up) (quoting *Neitzke v. Williams*, <u>490 U.S. 319, 327</u> (1989)).

[4] Panel Op. p. 6 (citing *Twombly*, <u>550 U.S. at 555</u>).

[5] Panel Op. p. 6.

# TABLE OF CONTENTS

Certificate of Interested Persons                                       i

Rule 35(b)(1) Statement                                                ii

Table of Contents                                                      iv

Table of Citations                                                      v

Statement of Issues                                                     7

Statement of the Case                                                   7

    **Course of Proceedings**                                       **7**

    **Statement of Facts**                                          **8**

Argument                                                               11

    **1. Cannon clearly acted by virtue of his state authority.**    **11**

    **2. Despite acting "under color of law," Cannon's acts were private, not within the scope of his duties, and he is thus unable to raise the qualified immunity defense.**    **12**

    **3. Even if Cannon could raise the qualified immunity defense, Petitioner clearly overcomes it.**    **15**

Conclusion                                                             20

Certificate of Service                                                 21

Certificate of Compliance                                              22

# TABLE OF CITATIONS

## CASES

*Anderson v. Creighton*, 483 U.S. 635 (1987) ................................................. 18

*Bell Atl. Corp. v. Twombly*, 550 U.S. 554 (2007) .................................... iii, 14

*California v. Hodari D.*, 499 U.S. 621 (1991).................................. 15, 16, 18

*Cooper v. Brown*, 844 F.3d 517 (5th Cir. 2016) ......................................... 18

*Deville v. Marcantel*, 567 F.3d 156 (5th Cir. 2009) ................................... 17

*Florida v. Royer*, 460 U.S. 491 (1983) ................................................. 15, 18

*Gomez v. Galman*, 18 F.4th 769 (5th Cir. 2021) ....................................... 11

*Joseph v. Bartlett*, 981 F.3d 319 (5th Cir. 2020) ................................. 17, 18

*Katz v. United States*, 389 U.S. 347 (1967) .................................... 18, 19, 20

*Keller v. Fleming*, 952 F.3d 216 (5th Cir. 2020)................................... 18, 19

*Neitzke v. Williams*, 490 U.S. 319 (1989).......................................... iii, 14

*Pearson v. Callahan*, 555 U.S. 223 (2009) ................................................. 17

*Sweetin v. City of Texas City*, 48 F.4th 387 (5th Cir. 2022) ............. ii, 12, 13

*Tolan v. Cotton*, 572 U.S. 650 (2014)....................................................... 17

*United States v. Mendenhall*, 446 U.S. 544 (1980).......................... 15, 16, 18

*United States v. Sharpe*, 470 U.S. 675 (1985)............................................ 19

*West v. Atkins*, 487 U.S. 42 (1988) .......................................................... 11

## STATUTES

Tex. Penal Code § 39.03................................................................... ii, 12, 13

## RULES

Federal Rule of Evidence 201 ..................................................................... 10

## CONSTITUTIONAL PROVISIONS

U.S. Const. Amend. IV ............................................................................ 15

## STATEMENT OF ISSUES

1. Whether an officer acting under color of law may use their authority to pursue private, illegal objectives.

2. Whether an officer pursuing private, illegal objectives may raise the qualified immunity defense.

3. Whether a court may ignore individual factual allegations by considering them "speculative."

## STATEMENT OF THE CASE

**Course of Proceedings**

This civil rights case was filed on January 30th, 2022,[6] and most recently amended on June 27th, 2022.[7] The second amended complaint was filed after the district court dismissed Appellant's claims without prejudice, with permission to amend.[8] The district court dismissed Harris County, Ed Gonzalez, and Mark Cannon with prejudice on September 6th, 2022,[9] Appellant voluntarily dismissed Michael Hines on May 11th, 2023,[10] and the district court issued its order of dismissal on May 15th, 2023[11]

---

[6] [ROA.2](ROA.2) (Doc. 1).

[7] [ROA.6](ROA.6) (Doc. 37).

[8] [ROA.5](ROA.5) (Doc. 32).

[9] [ROA.7](ROA.7) (Doc. 47).

[10] [ROA.7](ROA.7) (Doc. 52).

[11] [ROA.7](ROA.7)–8 (Doc. 53).

Appellant timely filed her Notice of Appeal on June 13th, 2023.[12] The Panel issued its published opinion affirming the district court on July 9th, 2024, without oral argument.[13]

**Statement of Facts**

On February 23rd, 2020, Deputies Hines and Cannon were working off-duty at a Harris County Sheriff's Office (HCSO)-approved job at a bar called "The Address."[14] Both Deputies were wearing their duty uniforms with HCSO insignia, HCSO-issued guns, HCSO badges, and driving marked HCSO squad cars.[15] Although visually indistinguishable from on-duty officers, Hines and Cannon were both aware that because they were off duty, their activities and location were not being monitored by HCSO dispatch, they were not required to report their actions or activities to HCSO, and that they are conceptually considered private actors operating private vehicles.[16]

Shanita Terrell was also at The Address that night as a patron, where one of her cousins works.[17] When she left the bar, there was visibly and audibly something wrong, indicating that she was not in her usual state of mind.[18]

---

[12] ROA.8 (Doc. 54).

[13] *See* Panel Opinion (attached).

[14] ROA.386–87.

[15] ROA.386–87.

[16] ROA.386–87.

[17] ROA.387.

[18] ROA.387.

Her appearance and actions were consistent with someone under the influence a "date-rape" drug, which mimics the alcohol intoxication in many ways.[19]

Deputies Hines and Cannon, by words and actions, forced Ms. Terrell into the front seat of Deputy Hines's squad car over her clear, unambiguous, and repeated protest, claiming Hines would take her home.[20] Although Ms. Terrell clearly did not want to get into Hines's squad car, she was ordered to do so and believed that she was either under arrest or would be arrested for refusing.[21]

When Ms. Terrell woke up the next morning, she felt pain in her vaginal area, and went to a hospital, where a rape kit was utilized that revealed semen belonging to Deputy Hines on one of her undergarments.[22] Ms. Terrell did not consent to sexual intercourse with Hines at any point, nor was she capable of giving consent in her state of mind.[23]

Ms. Terrell lacked the memory of this sexual encounter with Hines in a manner consistent with someone that had been given a date-rape drug.[24] Appellant pled that at a minimum, Hines and Cannon were aware that she was displaying symptoms of a date-rape drug, or alternatively gave Ms.

---

[19] ROA.387–88.

[20] ROA.388.

[21] ROA.388.

[22] ROA.388.

[23] ROA.388.

[24] ROA.389.

Terrell the date-rape drug without her knowledge or consent, and forced her into the front seat of Hines's squad car so that Hines could sexually assault her.[25] Even if Hines and Cannon believed Ms. Terrell was merely drunk, they had numerous options at their disposal to prevent Ms. Terrell from driving home.[26]

Since filing the Notice of Appeal, Michael Hines pled guilty to felony attempted sexual assault for the series of events at issue here.[27]

---

[25] ROA.389.

[26] ROA.389–90.

[27] The Court may take judicial notice of this fact under Federal Rule of Evidence 201.

# ARGUMENT

**1. Cannon clearly acted by virtue of his state authority.**

Civil rights claims are predicated on the fact that the defendant was "acting under color of state law."[28] Notably, the district court agreed in both orders granting Cannon's motions that Deputy Cannon was acting under color of state law,[29] as did the Panel.[30] The facts make clear that Cannon was operating under color of law, but the *standard* is most important. With respect to the "color of law" analysis, this Court provides:

> Generally, if an officer is performing their official duties, their acts are included whether they hew to the line of their authority or overstep it, though acts of officers in the ambit of their personal pursuits are plainly excluded. That said, even if an officer acts for purely personal reasons, he or she may still act under color of law *if they are acting by virtue of state authority*.[31]

Importantly, the determination that Cannon acted under color of law was both correct, and an indication that *he acted by virtue of his authority* granted by his uniform, his duty vehicle, and his behavior. As Petitioner has explained, that he was enabled to take the actions at issue by virtue of his state law authority brings her claims under § 1983, but it does *not* change

---

[28] *West v. Atkins*, 487 U.S. 42, 48 (1988).

[29] ROA.574–75.

[30] Panel Op. p. 6.

[31] *Gomez v. Galman*, 18 F.4th 769, 776 (5th Cir. 2021) (emphasis added) (cleaned up).

the fact that his actions were that of a private actor, forcing an incapacitated woman into the vehicle of another private actor.

2. **Despite acting "under color of law," Cannon's acts were private, not within the scope of his duties, and he is thus unable to raise the qualified immunity defense.**

According to the district court and the Panel, Petitioner met her threshold in establishing that Cannon was acting under color of state law. However, they overlooked the "oft-overlooked threshold requirement" of qualified immunity in holding that Cannon was entitled to the defense. Just two years ago, this Court held that:

> The first part of [qualified immunity] often gets overlooked: To even get into the qualified-immunity framework, the government official must "satisfy his burden of establishing that the challenged conduct was within the scope of his discretionary authority."
>
> That oft-overlooked threshold requirement is dispositive here. To figure out whether an official was acting within the scope of his duties, we look to state law.
>
> . . . Texas law criminalizes a public official's act of "intentionally subject[ing]" a person to "seizure" "that he knows is unlawful."[32]

Cannon has not met his burden here. In fact, Cannon himself conceded that "Ms. Terrell was not put in the car because of a crime or because of

---

[32] *Sweetin v. City of Texas City*, 48 F.4th 387, 391–92 (5th Cir. 2022) (citing Tex. Penal Code § 39.03).

probable cause."[33] Petitioner also explicitly pled that Cannon was aware that putting someone in the front seat of a squad car was both contrary to HCSO policy, and he was aware that Hines was off duty.[34] As a result, he "intentionally subjected" Ms. Terrell to "seizure that he knew was unlawful," because he knew he lacked probable cause, knew it was against County policy to seize her in the manner he did, and knew that the seizure was in furtherance of his and Hines' *private* objectives.[35]

Moreover, Texas law reads as follows:

> (a) A public servant acting under color of his office or employment commits an offense if he:
>
> > (1) intentionally subjects another to mistreatment or to arrest, detention, search, seizure, dispossession, assessment, or lien that he knows is unlawful;
> >
> > . . .; or
> >
> > (3) intentionally subjects another to sexual harassment.
>
> (b) For purposes of this section, a public servant acts under color of his office or employment if he acts or purports to act in an official capacity or takes advantage of such actual or purported capacity.[36]

First of all, it makes clear exactly what Petitioner has been saying all along: an officer can act "under color of his office or employment," and still

---

[33] ROA.268.

[34] ROA.389 ¶¶ 26–27.

[35] *Sweetin*, 48 F.4th at 392 (citing Tex. Penal Code § 39.03).

[36] Tex. Penal Code § 39.03.

act outside his duties or discretionary authority. Second, Petitioner plausibly alleged that Cannon's actions could have been knowingly in service of a plot by Hines to drug, abduct, and sexually assault Ms. Terrell, which would fall under subsection (a)(3) in addition to subsection (a)(1). Such a contradiction should be corrected by the *en banc* court.

This analysis also highlights another issue with the Panel's opinion: its contravention of the pleading standard. First, it incorrectly labeled Petitioner's assertion that Cannon and Hines were private, off-duty deputies working toward a private objective as a legal conclusion.[37] Even if it was a "legal conclusion," the statute discussed here clearly shows that it is the correct conclusion. More problematically, while the Panel correctly noted that Ms. Terrell's allegation that Cannon was working in concert with Hines in order to carry out the sexual assault was indeed a factual allegation, but determined that it was "purely speculative," and "len[t] it no credence."[38] It explicitly disbelieved factual allegations in the complaint in order to avoid considering them. The Court may dismiss where the *right to relief* is speculative, but may not single out and ignore facts that it believes are speculative.[39] In *Twombly* and *Neitzke*, the Supreme Court that "Rule 12(b)(6) does not countenance dismissals based on a judge's disbelief of a complaint's factual allegations."[40] Because the Panel explicitly contravened

---

[37] Panel Op. p. 6.

[38] Panel Op. p. 6 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)).

[39] *Twombly*, 550 U.S. at 555–56.

[40] *Id.* (cleaned up) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)).

the Supreme Court's articulation of the appropriate standard, the *en banc* Court should correct it.

### 3. Even if Cannon could raise the qualified immunity defense, Petitioner clearly overcomes it.

The Fourth Amendment protects the public from unreasonable searches and seizures by the government.[41] In articulating this right, the U.S. Supreme Court has explained that "a person has been seized within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave."[42] In determining whether there was a seizure under this standard, there need not be any use of force, display of a weapon, or physical prevention from escape for a government official to violate the Fourth Amendment.[43] Instead, the Fourth Amendment may be violated when a government official's "*words and actions* would have conveyed [] to a reasonable person" that they were "being ordered to restrict [their] movement."[44] An example of such a "show of authority" is "the use of

---

[41] U.S. Const. Amend. IV.

[42] *California v. Hodari D.*, 499 U.S. 621, 627–28 (1991) (quotations and alterations omitted) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980), citing *Florida v. Royer*, 460 U.S. 491, 502 (1983) (opinion of White, J.)).

[43] *Mendenhall*, 446 U.S. at 553–56.

[44] *Hodari D.*, 499 U.S. at 628 (emphasis added).

language or tone of voice indicating that compliance with the officer's request might be compelled."[45]

Applying the actual facts of the complaint to the Fourth Amendment standard, Ms. Terrell was unquestionably seized. Because she was forced into a police squad car by Cannon, she "believed that she was not free to leave."[46] Her freedom of movement was terminated by Cannon's "words and actions" that would have conveyed to anyone that they were not free to leave.[47] Effectively, Cannon forced Ms. Terrell against her will into the car of one of the bar's bouncers.[48] That the bouncer is also an off-duty deputy is irrelevant to the unlawful seizure claim against Cannon except to the extent that Cannon and Hines used their equipment, appearance, and authority to force Ms. Terrell in to Hines's car, which turned this possible tort claim into a civil rights claim.

Appellant also alleged that she was likely under the influence of a date-rape drug, and included an alternative allegation that Hines specifically may have given her a date-rape drug without her knowledge or consent as part of a plan to sexually assault Ms. Terrell.[49] These allegations provide objective facts—that Ms. Terrell was drugged and that Hines drugged her as part of a plan—from which this Court could reasonably infer that Cannon, by acting

---

[45] *Mendenhall*, 446 U.S. at 554 (citations omitted).

[46] ROA.386–90; *see Hodari D.*, 499 U.S. at 627–28.

[47] ROA.386–90.

[48] ROA.386–90.

[49] ROA.386–90.

in concert with Hines, was aware of and participated in this plan. Taken together in the light most favorable to Appellant, these facts cannot be construed as reasonable conduct on the part of Cannon—no reasonable officer can legitimately help a private citizen abduct someone as part of a plan to commit sexual assault, even if that person appears visibly intoxicated.[50]

With respect to qualified immunity, the Court must balance both "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."[51] At this stage, the plaintiff must first plead facts that demonstrate unconstitutional conduct.[52] They then must additionally show that on *their facts*, the constitutional violation was "clearly established."[53] In order to be clearly established, "the unlawfulness of the challenged conduct must be beyond debate[, which] leaves the rare possibility [of] an obvious case . . . [where] the unlawfulness of the challenged conduct is sufficiently clear even though existing precedent does not address similar circumstances."[54] Generally, qualified immunity "requires the plaintiff to identify a case—usually, a body of relevant case

---

[50] ROA.386–90.

[51] *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

[52] *Joseph v. Bartlett*, 981 F.3d 319, 329, 329 n. 18 (5th Cir. 2020).

[53] *Id.* at 330 (citing *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (instructing courts to rely on the plaintiff's version of the facts when evaluating clearly established law); *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) (per curiam)).

[54] *Id.* (quotations, citations, and alterations omitted).

law—in which an officer acting under similar circumstances" was held liable, and the cases cited need not be *directly* on point.[55] When it comes to qualified immunity, "[t]he central concept is 'fair warning.'"[56]

First of all, the violation is obvious because Cannon himself conceded below that "Ms. Terrell was not put in the car because of a crime or because of probable cause."[57] Absent any justifiable reason to seize Ms. Terrell or detain her in Hines's squad car, his choice to detain her cuts against the very heart of what the Fourth Amendment seeks to prohibit. "Absent probable cause, warrantless searches and seizures are presumptively invalid or '*per se* unreasonable under the Fourth Amendment.'"[58]

Put differently, it is beyond debate that Ms. Terrell was seized within the meaning of the Fourth Amendment.[59] The question then becomes whether any reasonable officer could have believed that forcing Ms. Terrell into the vehicle of a private citizen was lawful.[60] Cannon's conduct was an obvious violation of the Fourth Amendment, and the new facts alleged in her second amended complaint make that violation even more obvious. There are no set

---

[55] *Id.* (quotations, citations, and alterations omitted).

[56] *Cooper v. Brown*, 844 F.3d 517, 524 (5th Cir. 2016) (citations omitted).

[57] ROA.268.

[58] *Keller v. Fleming*, 952 F.3d 216, 223 (5th Cir. 2020) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)).

[59] *California v. Hodari D.*, 499 U.S. 621, 627–28 (1991) (quotations and alterations omitted) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980), citing *Florida v. Royer*, 460 U.S. 491, 502 (1983) (opinion of White, J.)); ROA.386–90.

[60] *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

of circumstances in which forcing a person against their will into a private actor's private vehicle would be a reasonable means of conducting a Fourth Amendment seizure, especially where the seizure occurs without probable cause and outside the context of a crime at all.

Again, "[a]bsent probable cause, warrantless searches and seizures are presumptively invalid or '*per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions.'"[61] Cannon has identified no such exception at any point. The only justification provided was that preventing a visibly intoxicated person from driving home should be considered reasonable. This justification fails for several reasons, beyond the fact that it was not tied to one of the "few specifically established and well delineated exceptions" to the probable cause requirement.[62]

Even assuming that this justification was sufficient, the means of effecting the seizure must also be evaluated as to "whether it was reasonably related in scope to the circumstances which justified" the seizure, and "whether the police acted unreasonably in failing to recognize or to pursue" an alternative.[63] Forcibly putting Ms. Terrell into a stranger's car against her will is not "reasonably related in scope" to preventing her from driving away in her own car, especially given Appellant identified several alternative

---

[61] *Keller v. Fleming*, 952 F.3d 216, 223 (5th Cir. 2020) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)).

[62] *Katz*, 389 U.S. at 357.

[63] *United States v. Sharpe*, 470 U.S. 675, 682, 687 (1985).

means of achieving the same result that Cannon was "unreasonable[] in failing to recognize or to pursue."[64] The second amended also complaint supports the reasonable inference that Cannon's objective conduct was in service of Hines's plan to drug and sexually assault Ms. Terrell.[65] Under those facts, there is no objective basis for the justification in the first place, meaning that the seizure must be considered *per se* unreasonable.[66]

Despite these clear facts and law, the Panel granted qualified immunity, which requires correction by the *en banc* Court.

## CONCLUSION

Thus, Petitioner respectfully requests that this Court **VACATE** the Panel's opinion and rehear this case *en banc*.

*/s/ Alexander C. Johnson*
Alexander C. Johnson
Kallinen Law PLLC
State Bar of Texas
   Bar No. 24123583
alex@acj.legal
511 Broadway Street
Houston, Texas 77012
Telephone: 573.340.3316
**Attorney for Appellant**

---

[64] ROA.386–90.

[65] ROA.386–90.

[66] *Katz*, 389 U.S. at 357.

/s/ Randall L. Kallinen
Randall L. Kallinen
Kallinen Law PLLC
State Bar of Texas
    Bar No. 00790995
attorneykallinen@aol.com
511 Broadway Street
Houston, Texas 77012
Telephone: 713.320.3785
Fax: 713.893.6737
**Attorney for Appellant**

## CERTIFICATE OF SERVICE

I certify that on July 23rd, 2024, the foregoing Brief was filed electronically

using the Court's CM/ECF system, which will give notice to all counsel of

record through the Court's ECF System.

/s/ Alexander C. Johnson
Alexander C. Johnson
**Attorney for Appellant**

# Certificate of Compliance

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 35(b)(2)(A) because it contains 3,899 words, excluding the content permitted by Rule 32(f). This brief complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word version 16, and is set in Adobe Caslon Pro, size 14.

*/s/ Alexander C. Johnson*
Alexander C. Johnson
**Attorney for Appellant**

# United States Court of Appeals
# for the Fifth Circuit

--------------

No. 23-20281

--------------

United States Court of Appeals
Fifth Circuit

**FILED**

July 9, 2024

Lyle W. Cayce
Clerk

SHANITA TERRELL,

*Plaintiff—Appellant,*

*versus*

HARRIS COUNTY; MICHAEL HINES; MARK CANNON; ED
GONZALEZ,

*Defendants—Appellees.*

-----------------------------------------

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:22-CV-302

-----------------------------------------

Before BARKSDALE, SOUTHWICK, and GRAVES, *Circuit Judges.*

JAMES E. GRAVES, JR., *Circuit Judge*:

Appellant Shanita Terrell alleges that two Harris County Sheriff's Office ("HCSO") deputies forced her into a patrol car. Later, she alleges, one of the deputies sexually assaulted her. The district court granted qualified immunity to the deputy who was not accused of sexual assault. On appeal, Terrell fails to establish that the deputy violated a clearly established constitutional right. She also fails to allege the type of pattern of deliberate indifference required to establish liability for the County or its Sheriff. We AFFIRM.

No. 23-20281

# I. BACKGROUND

## a. Factual background

We begin with the allegations of the operative complaint, which at the dismissal stage we accept as true and construe in the light most favorable to Terrell. *Crane v. City of Arlington*, <u>50 F.4th 453, 461</u> (5th Cir. 2022).

Terrell spent the evening of February 23, 2020, at The Address, a bar in Houston where her cousin works. When she left, "there was visibly and audibly something wrong with her and she was not in her usual state of mind." At some point, Terrell encountered off-duty HCSO Deputies Michael Hines and Mark Cannon. Hines and Cannon worked side jobs at The Address and were in HCSO uniforms. HCSO policy allows deputies to wear their uniforms and use HCSO equipment and patrol vehicles while working off-duty side jobs.

The deputies ordered Terrell into Hines's patrol vehicle, telling her they were going to take her home. Terrell initially protested but ultimately got in, believing she was either under arrest or would be arrested if she continued to resist. The complaint contains no allegations as to what happened immediately afterward.

Terrell awoke the next morning at home and felt pain in her vaginal area. She went to the hospital, where a rape kit was administered. A DNA test revealed that semen in her underwear matched Deputy Hines. Terrell had no memory of having sex with him. She later came to suspect that someone had slipped Rohypnol, also known as "roofies," into her drink at The Address. Roofies are known to be used by sexual predators to incapacitate their victims.

No. 23-20281

In August 2021, eighteen months after the incident, Hines was charged with sexually assaulting Terrell.[1]

### b. Procedural background

Terrell sued Deputy Cannon, Deputy Hines, Harris County Sheriff Ed Gonzalez, and Harris County under 42 U.S.C. § 1983. Hines was served but never responded, and Terrell later voluntarily dismissed her claims against him.

Terrell's first amended complaint alleged that Cannon violated her Fourth and Fourteenth Amendment rights by forcing her into Hines's patrol vehicle. She alleged that Sheriff Gonzalez was liable as the deputies' supervisor and that Harris County was liable for inadequately training the deputies.

The district court dismissed the first amended complaint for failing to state a claim. Terrell then filed a second amended complaint. The district court dismissed it with prejudice, concluding that Terrell's allegations were still deficient. This appeal followed.[2]

## II. LEGAL STANDARD

Dismissal for failure to state a claim is reviewed de novo. *Sw. Bell Tel., LP v. City of Houston*, 529 F.3d 257, 260 (5th Cir. 2008). To state a claim, a

---

[1] Terrell appended documents to her opening brief indicating that Hines pled guilty to sexually assaulting Terrell. The parties disagree as to whether it is proper for the court to consider those documents. We do not address that issue here because Hines's plea is ultimately not relevant to the analysis of Terrell's claims.

[2] In addition to the issues we address, Terrell argues that qualified immunity "should no longer exist." The law on qualified immunity is binding under decades of Supreme Court precedent. We leave to the Supreme Court "the prerogative of overruling its own decisions." *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 136 (2023) (citation omitted).

No. 23-20281

plaintiff's allegations need not be detailed but they must support a claim to relief that is plausible on its face. *Hutcheson v. Dallas County*, 994 F.3d 477, 482 (5th Cir. 2021). The allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). We "do not accept as true legal conclusions, conclusory statements, or naked assertions devoid of further factual enhancement." *Guerra v. Castillo*, 82 F.4th 278, 284 (5th Cir. 2023).

Any person whose constitutional rights are violated by an officer acting under color of law may sue that officer for money damages. 42 U.S.C. § 1983. But "[q]ualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a . . . constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The plaintiff has the burden to show that her claim is not barred by qualified immunity. *Cooper v. Brown*, 844 F.3d 517, 522 (5th Cir. 2016).

## III. DISCUSSION

### a. Qualified immunity

We may address either qualified immunity prong first, and we can affirm the district court on either if Terrell fails to make the required showing. *al-Kidd*, 563 U.S. at 735. Terrell contends that Cannon's actions were clearly established as unconstitutional under the Fourth Amendment. The argument goes to her prong-two qualified immunity burden. *Id.* at 741. So, we start there.

To satisfy prong two, Terrell must point to legal precedent that puts the wrongfulness of Cannon's actions "beyond debate." *Id.* Such precedent must speak to "the violative nature of [the] particular conduct" and "the specific context of the case." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015).

No. 23-20281

Terrell fails to point to any precedent meeting that standard. She first points to *Gomez v. Galman*, 18 F.4th 769 (5th Cir. 2021). But *Gomez* was decided in November 2021. It could not have clearly established the unconstitutionality of Cannon's actions, which allegedly occurred in February 2020. *See Anderson v. Valdez*, 845 F.3d 580, 607 (5th Cir. 2016) (excluding "post-conduct cases").

To a lesser extent, she points to *United States v. Sharpe*, 470 U.S. 675 (1985) and *Katz v. United States*, 389 U.S. 347 (1967). *Sharpe* concerned a prolonged detention during an investigatory traffic stop. *Sharpe*, 470 U.S. at 677–79. *Katz* concerned surveillance of calls made from a public telephone booth. *Katz*, 389 U.S. at 348. Those cases certainly set parameters for identifying a Fourth Amendment violation. But neither establishes the "violative nature" of Cannon's "particular conduct" or speaks to the "specific context" of Terrell's allegations. *Mullenix*, 577 U.S. at 12.

Alternatively, Terrell argues that Cannon's actions were so obviously unconstitutional, no precedent is required. The Supreme Court has denied qualified immunity without requiring precedent in some cases that concern obvious violations, albeit rarely. *See Hope v. Pelzer*, 536 U.S. 730, 741 (2002); *Taylor v. Riojas*, 592 U.S. 7, 8–9 (2020) (concluding that given "extreme circumstances" of the case, "no reasonable . . . officer could have concluded" that his actions were constitutionally permissible).

But the allegations that Terrell offers in support of her obviousness argument are not adequate to sustain it. She points first to her allegation that off-duty officers are "conceptually considered private actors operating private vehicles" because they are not monitored or required to report their activities to a dispatcher. "There [is] no set of circumstances," Terrell argues, "in which forcing a person against their will into a private actor's

No. 23-20281

private vehicle would be a reasonable means of conducting a Fourth Amendment seizure . . . ."

Terrell's claim that off-duty deputies should be treated the same as private citizens is, at bottom, a legal argument, not a factual claim. We cannot therefore accept it as true. *Twombly*, 550 U.S. at 555. Nor does she provide authority to support it as a legal argument. If anything, she establishes the opposite: that Hines and Cannon acted under color of law during the encounter because they were adorned with, and wielded, law enforcement authority. *See West v. Atkins*, 487 U.S. 42, 49 (1988). We cannot construe their actions as if they were private actors.

Terrell also points to her allegation that Cannon's "real motive may have been to allow sexual assault of Ms. Terrell by Deputy Hines." That *is* a factual claim, but a purely speculative one, and thus we lend it no credence. *See Twombly*, 550 U.S. at 555.

In sum, Terrell failed to show a clearly established violation of her rights. The district court correctly granted qualified immunity to Cannon.

### b. Supervisory liability

Next, Terrell seeks to hold Sheriff Gonzalez liable for Hines's actions as his supervisor. "Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." *Roberts v. City of Shreveport*, 397 F.3d 287, 292 (5th Cir. 2005) (citation omitted). Rather, to establish such liability, a plaintiff must show that: "(1) the [alleged supervisor] failed to supervise or train the officer; (2) a causal connection existed between the failure to supervise or train and the violation of the plaintiff's rights; and (3) the failure to supervise or train amounted to deliberate indifference to the plaintiff's constitutional rights." *Id.*

No. 23-20281

Terrell's allegations against Gonzalez are also sparse. She alleges, first, that Gonzalez was aware that Hines was arrested for sexually assaulting a child in 2018 and that Gonzalez "does not investigate and/or discipline officers alleged of crimes if they are no-billed[3] by a Grand Jury including sexual assault of a minor."

To allege deliberate indifference, Terrell's allegations must allow us to reasonably infer "a pattern of similar violations arising from [supervision] that is so clearly inadequate as to be obviously likely to result in a constitutional violation." *Id.* She alleges one related incident, not a pattern.

And while a single incident may give rise to an inference of deliberate indifference, that is only the case when "the highly predictable consequence of a failure to [supervise] would result in the specific injury suffered, and that the failure to [supervise] represented the moving force behind the constitutional violation." *Id.* at 295. To be "highly predictable," an outcome must be "*so* predictable that" the failure to supervise or discipline "amounted to *conscious disregard* for" the plaintiff's rights. *Connick v. Thompson*, 563 U.S. 51, 71 (2011) (emphasis in original). Terrell's acknowledgement that Hines was no-billed on the sexual assault charge— along with the conclusory nature of her allegations generally—makes it unreasonable to infer that her assault was a "highly predictable consequence" of Gonzalez's alleged failure to investigate Hines.

Terrell also alleges that Gonzalez customarily does not investigate, or discipline, deputies accused of violations if the complainant is charged with a crime. The allegation is puzzling given that Terrell does not allege that she

---

[3] A Texas arrestee is "no-billed" when the grand jury votes against the presentment of an indictment. Tex. Code Crim. Proc. Ann. Art. 20A.301. Terrell's allegation implies that Hines was no billed in this manner.

No. 23-20281

complained of Hines's conduct or that she was charged with a crime. In short, her allegation is too conclusory to sufficiently allege the requisite causal connection between Gonzalez's actions and Terrell's injury. *Guerra*, 82 F.4th at 285. Terrell's supervisory claims against Gonzalez fail.

### c. Municipal liability

Last, Terrell accuses Harris County of maintaining a policy of failure to adopt adequate training. To sustain a § 1983 claim against a municipality— a "*Monell* claim" [4]—a plaintiff must show that a policymaker can be charged with knowledge of a policy, custom, or practice that was the moving force in her injury. *Hutcheson*, 994 F.3d at 482. A custom or practice is a pattern "so persistent and widespread as to practically have the force of law." *Peña v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018) (quoting *Connick*, 563 U.S. at 61). The plaintiff cannot rely solely on the incident that resulted in her injury to demonstrate such a pattern. *Id.*

Terrell argues that her allegations that Hines and Cannon forced her into Hines's patrol vehicle and that Hines sexually assaulted her are sufficient to show a failure-to-train policy because they are outrageous. But a single incident simply cannot demonstrate a widespread pattern. *Id.*

Terrell also repeats her argument that Gonzalez's failure to investigate Hines for his earlier sexual assault arrest constituted deliberate indifference. That argument fails for the reasons stated above.

### IV. CONCLUSION

The district court did not err in concluding that Terrell's claim against Cannon is barred by qualified immunity. It also correctly dismissed Terrell's supervisory and municipal liability claims. Accordingly, we AFFIRM.

_____

[4] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).